**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 2:09-CR-225 |
| JAMES ELLIOTT, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION and ORDER**

James Elliott [1] pled guilty to unlawfully possessing a firearm as a convicted felon. Three of his prior felonies arise out of a five-day burglary spree committed some 13 years ago when Elliott was 18 years old. Those five days in the distant past are now coming back to haunt him because the Presentence Report and the government contend that under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), Elliott is subject to a statutory mandatory minimum term of 180 months of imprisonment. Elliott's Sentencing Memorandum argues that the ACCA should not apply to him because his three prior violent felonies should all be considered as one singular felony that occurred over a five-day period. Elliott also argues that the 180-month mandatory minimum violates the Eighth Amendment's protection against cruel and unusual punishment and that the ACCA violates the Fifth and Sixth Amendments' requirements that factual findings necessary to enhance his sentence be charged in the indictment and found by a jury.

Each of these arguments is clearly foreclosed by precedent of the Supreme Court and the

[1]The parties sometime spell his name "Elliot" and at other times spelled it "Elliott." I will use the latter as that is the way the indictment spells it.

Seventh Circuit. While I am sympathetic to Elliott's arguments, and have long thoughts about whether guys like Elliott are who Congress had in mind when it passed the ACCA, I am without the authority to do what he asks me to do. Accordingly, I sentenced Elliott to the statutory minimum of 180 months which was below the suggested guideline range of 188-235 months.

**FACTUAL BACKGROUND**

Elliott pled guilty to one count of possession of a revolver after having previously been convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1). Three of Elliott's prior felonies are at the core of his argument that the ACCA doesn't apply to him. On November 5, 1998, Elliott pled guilty to three counts of burglary in the Superior Court of Lake County, Indiana. The burglaries occurred on May, 5, 6, and 9 of 1998, each incident taking place in a different building belonging to a different owner but within close geographical proximity. Elliott was charged with three counts of burglary under two separate cause numbers. His plea agreement addressed all three counts together, and sentences for all three were handed down at the same time on December 3, 1998. Elliott received two four-year sentences, to run concurrently, on the first two counts. On the third count, Elliott received another four years, to run consecutively to the first sentence.

Elliott's Sentencing Memorandum makes three arguments as to why the 180-month mandatory minimum of the ACCA under 18 U.S.C. § 924(e) should not apply to him: 1) that his three prior violent felonies should only count as one singular felony under the ACCA; 2) that the 180-month mandatory minimum violates the Eighth Amendment's protection against cruel and unusual punishment; and 3) that the ACCA violates the Fifth and Sixth Amendments' requirements that factual findings necessary to enhance his sentence be charged in the indictment

and found by a jury.  I will consider each of these arguments in turn below.

## ANALYSIS

### I. Number of Prior Convictions

A wealth of controlling precedent contradicts Elliott's argument that his three burglary convictions should be treated collectively as a single crime spree under the ACCA.  The ACCA states that a defendant is subject to a mandatory fifteen-year sentence if he has three prior convictions for a violent felonies "committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  In interpreting this different-occasions requirement, the Seventh Circuit has held that prior convictions are considered separate if they have arisen out of a "separate and distinct criminal episode."  *United States v. Schieman*, 894 F.2d 909, 911 (7th Cir. 1990).  In making this determination, the court is to look at the identities of the victims, the locations of the crimes, and whether the timing of the crimes would have allowed the defendant to withdraw from the criminal activity between episodes.  *United States v. Hudspeth*, 42 F.3d 1015, 1019-21 (7th Cir. 1994).

The *Hudspeth* decision is entirely on point with this case.  The defendant's prior convictions in that case were for burglaries of three neighboring stores within the same mall, all within approximately thirty-five minutes.  *Hudspeth*, 42 F.3d at 1018-19.  The court held that these burglaries were "distinct criminal episodes" because they "were committed sequentially, against different victims, at different times, and at different locations."  *Id.* at 1021.  The court determined that the effect of the ACCA's "committed on occasions different from each other language" was to distinguish between crimes committed sequentially and those committed simultaneously.  *Id*.  It reasoned that criminals who fail to take advantage of the opportunity

between sequential crimes to cease their criminal activity deserve harsher punishment than criminals whose single acts results in multiple, simultaneous crimes with no opportunity to withdraw in between them. *Id.* Thus, only convictions for simultaneously committed crimes are excluded by the ACCA's "on occasions different from each other" language. *Id.* *See also United States v. Morris*, 293 F.3d 1010, 1014 (7th Cir. 2002) (defendant had two prior convictions because he left the scene of first incident and had an opportunity to cease criminal activity before initiating an additional criminal aggression); *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000) (two sales of crack cocaine to the same people on the same day 45 minutes apart and half a block from each other were separate and distinct crimes because the defendant "had plenty of time to change his mind, to cease and desist, and to refuse to sell to the informants"); *United States v. Godinez*, 998 F.2d 471, 472 (7th Cir. 1993) (rejecting argument that kidnaping and robbery were committed on single occasion during which defendant had stolen victim's car for use in robbery and then held victim captive so that she could not tip off police; the fact that the kidnaping was still in progress at the time of the robbery did not make the two crimes a single incident).

Elliott's case is factually indistinguishable from *Hudspeth* and must result in the same conclusion. Elliott's burglaries were committed on three separate days against different victims in different homes. In fact, Elliott's crimes were separated by more time and more distance than those in *Hudspeth*. Although he tries to classify this behavior as one criminal spree, sufficient time passed between each burglary to allow the defendant to cease and desist and choose not to commit another crime. Instead, he chose to continue burglarizing homes. Elliott's three sequential burglaries were, therefore, "committed on occasions different from one another," thus

qualifying him for the enhanced sentencing under the ACCA.

Elliott's argument that the Seventh Circuit's interpretation improperly expands the ACCA beyond Congress's intentions must also be rejected. Elliott cites the Congressional Record to argue that the "on occasions different from each other" language was added to assure that enhanced sentences would only apply to career criminals who commit crimes over an *extended* period of time. [DE 30 at 2-3.] However, the Seventh Circuit in *Hudspeth* looked at the same legislative history and concluded that Congress's intent matched its interpretation of the plain language of the statute. *Hudspeth*, 42 F.3d at 1023-24. Congress intended the ACCA to exclude only simultaneously committed crimes – for example, crimes committed against multiple people at the same time or multiple crimes resulting from a single act. *Id*. at 1023. Although Elliott may disagree with the Seventh Circuit's interpretation of Congress's intent, it controls this case.

Elliott also argues that the concurrent sentencing for two of his burglaries indicates a recognition by the sentencing judge that the convictions were for crimes within a single, short crime spree. That's likely so but beside the point. Whether sentences are ordered to run concurrently has no bearing on applicability of the ACCA and the analysis of whether crimes were "committed on occasions different from one another." *See United States v. Runnels*, 269 Fed. Appx. 610, 610-11 (7th Cir. Mar. 18, 2008) (refusing to consider fact that convictions were consolidated for sentencing and that sentences were to run concurrently).

## II. Eight Amendment

Elliott's Eighth Amendment argument also fails. The Seventh Circuit has rejected Eighth Amendment attacks against the ACCA, writing that "[n]o court has so much as hinted that 15

years in jail for possession of a deadly weapon by a person with multiple convictions for violent felonies . . . is impermissible." *United States v. Sanchez*, 859 F.2d 483, 486 (7th Cir. 1988). Elliott attempts to distinguish his case from prior failed Eighth Amendment attacks on the ACCA by arguing that the defendants in those cases were the intended targets of ACCA, while he is not. He argues that when the danger targeted by the ACCA is not present, the imposition of an enhanced sentence is not justified. As discussed above, however, the Seventh Circuit has determined that the ACCA was intended to target defendants like Elliott whose prior crimes were committed sequentially, against different victims, and in different locations. *Hudspeth*, 42 F.3d at 1021. Therefore, this case contains no distinguishing facts that would warrant re-evaluating the constitutionality of the ACCA.

**III. Fifth and Sixth Amendments**

Elliott's argument that the ACCA violates his Fifth and Sixth Amendment rights is also squarely foreclosed by precedent. Elliott cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000) for the proposition that due process and the right to a jury trial require that any factual findings necessary to enhance a sentence – including the factual finding of his prior convictions – be charged in the indictment and found by the jury. The *Apprendi* decision, however, relied on *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) to carve out an exception to this rule when the fact in question is a prior conviction. *Apprendi*, 530 U.S. at 489-90. The Seventh Circuit has already explicitly concluded that the *Almendardez-Torres* exception allows a court to make prior-conviction findings in ACCA cases. *United States v. Skidmore*, 254 F.3d 635, 641-42 (7th Cir. 2001). Elliott in fact concedes the existence of this exception but wishes to preserve the issue for appeal, citing recent caselaw calling the *Almendarez-Torres* decision into question.

*See Shepard v. United States*, 544 U.S. 13, 25-26 (2005) (ACCA enhancement case denying use of *Almendarez-Torres* exception to allow court to find facts about a prior conviction when those fact were not in the prior judicial record). For now, however, *Almendarez-Torres* remains good law, and I am bound by it. *See James v. United States*, 550 U.S. 192, 214 n.8 (2007); *United States v. Browning*, 436 F.3d 780, 781-82 (7th Cir. 2006) (concluding that *Almendarez-Torres* was not overruled by factually distinct *Shephard* and is still binding). Therefore, Elliott's Fifth and Sixth Amendment arguments fail.

**CONCLUSION**

Accordingly, the arguments set forth in Defendant James Elliott's Sentencing Memorandum regarding the Armed Career Criminal Act and the Fifth, Sixth, and Eighth Amendments are **DENIED**.

**SO ORDERED.**

ENTERED: July 28, 2011

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT